IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

CARL FLOWERS, JOYCE PURSLEY,
JARROD SERZYNSKI, AMANDA HALL,
JESSICA WILLIAMS and HAILEY TUCKER
Plaintiffs,

v.

AWP, INC.
c/o CT CORPORATION SYSTEM,
Statutory Agent
4400 Easton Commons Way Columbus, OH 43219

ELECTRONICALLY FILED
12/22/2021
U.S. DISTRICT COURT
Northern District of WV

Civil Action No. 5:21-CV-211
Hon. Judge Bailey
JURY TRIAL DEMANDED

Plaintiffs, by and through undersigned counsel, as their Complaint against Defendant, states and avers the following:

## PARTIES

1. Now and at all times relevant hereto, Plaintiffs Flowers, Pursley, Serzynski, Hall, and Tucker have resided in West Virginia.

2. Now and at all times relevant hereto Plaintiff Williams has resided in Ohio.

3. At all times relevant herein, Plaintiffs were employees of Defendant within the meaning of 29 U.S.C. 203(e).

4. AWP, Inc. ("AWP") is a domestic corporation with its principal place of business located inthe city of North Canton, state of Ohio.

5. At all times relevant herein, AWP was an employer within the meaning of 29 U.S.C. 203(d).

## PERSONAL JURISDICTION

6. AWP hires citizens of the state of West Virginia, contracts with companies in West

Virginia, and owns or rents property in West Virginia. As such, the exercise of personal jurisdiction over AWP comports with due process.

7. Plaintiffs worked in this judicial district, were paid unlawfully by AWP pursuant to work performed in this district and/or were hired and terminated in this district.

8. This cause of action arose from and relates to the contacts of AWP with West Virginia residents, thereby conferring specific jurisdiction over Defendant.

## SUBJECT MATTER JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10. Venue is proper in this District because Defendant does or did a sizeable portion of its business in this District, and many of the wrongs herein alleged occurred in this District.

## FLSA COVERAGE

11. At all times referenced herein, AWP formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times thereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. AWP has more than fifty employees.

13. At all times material to the Complaint, Plaintiffs participated in the actual movement of things in interstate commerce by regularly working upon intrastate and interstate roads

and highways and by travelling outside of their home state to perform their job duties.

## FACTS

14. AWP holds itself out as the largest traffic control company in the United States.

15. AWP provides flagging operations, traffic control services, interstate lane closure services, emergency road closure services, temporary traffic control for railway traffic, and event traffic control services.

16. AWP employs individuals as "Protectors" and/or "Flaggers" to provide traffic control services ("Protectors").

17. AWP's Protectors are hired to perform flagging in a two-person crew with a flagging truck at each jobsite.

18. Nearly 95 percent of the jobs performed by AWP include two "Protectors" and one flagging truck.

19. Plaintiffs were all employees of AWP.

20. Plaintiff Flowers began his employment with AWP on October 8, 2018.

21. AWP provided Plaintiffs Flowers, Pursley, and Hall each with a flagging truck that they were required to drive to each worksite.

22. The flagging trucks Plaintiffs were assigned weighed less than 10,000 lbs.

23. At all times referenced herein, Plaintiffs Flowers, Pursley, and Hall had principal job duties which required them to picking up other Protectors ("Non-Drivers") at meeting locations determined by AWP using their company-assigned flagging trucks and transporting the non-drivers to each AWP worksite that day before returning them to the meeting location at the end of the day ("Transportation Duties").

24. Plaintiffs performing Transportation Duties were required to deviate from the routes they

would have driven had they been permitted to drive straight to and from their homes to each worksite.

25. Plaintiffs being transported to job sites were similarly unpaid for large portions of the time they were chauffeured and diverted from job site to job site at AWP's direction.

26. AWP required Plaintiff Flowers, Hall, and Pursley to perform Transportation Duties as a duty of their employment.

27. Plaintiffs did not perform Transportation Duties voluntarily.

28. Plaintiffs could not refuse to perform Transportation Duties.

29. Prior to each shift, Plaintiffs were sent text messages by AWP that informed Plaintiffs of the location of the first job site for the following day, along with information regarding who they would be transporting and where they must meet the transportees.

30. At all times referenced herein, Plaintiffs were required to and did transport AWP equipment in their company-assigned trucks, including standard flagging equipment, radios, safety strobe lights, and exterior advertisements for AWP's services.

31. AWP required Plaintiffs to use its trucks for some of the following proffered reasons:

   a. Trucks like the one that was assigned to Plaintiff Flowers are included as part of AWP's standard quotes to customers, customers are billed for use of the trucks, and the trucks are parked within the worksites as a safety and protective measure;

   b. Each worksite requires at least two flaggers working at the same time to be effective;

   c. Protectors are required to use AWP's truck to setup their worksite;

   d. For safety reasons, AWP prohibited flaggers from parking their personal

    vehicles at worksites; and

    e. Plaintiffs' use of AWP's truck accomplished the other necessary functions of AWP's business which inure entirely to AWPs' benefit – the transportation of necessary equipment and supplies, as well as employees, to perform the work at the worksites.

32. The time Plaintiffs spent performing Transportation Duties was compensable under the FLSA because it was not incidental to their employment. See 29 U.S.C. § 254(a)(1); 29 U.S.C. §254(a)(2); 29 C.F.R. § 785.38; <u>Meeks v. Pasco Cry. Sheriff</u>, 688 Fed.Appx. 714, 717 (11th Cir. 2017) (holding that the workday was triggered by a county employer requiring employees to pick up county vehicles with tools at secure work sites); <u>Herman v. Rich Kramer, Const., Inc.</u>, 163 F.3d 602, 603, 1998 WL 664622 (8th Cir. 1998)(travel time compensable after pick up of tools, supplies, and employees from the shop); <u>Burton v. Hillsborough Cnty.</u>, 181 F. App'x 829, 834-35 (11th Cir. 2009) ([W]here an employer's mandate or job requirement interrupts an employee's home-to-work and work-to-home path, the travel time necessary for the employee to fulfill that requirement falls outside of exempted activity in §254, and is therefore compensable under the FLSA.")

33. The worksites Plaintiffs worked at changed regularly and were often located in excess of one hour from the meeting or "pick-up" location.

34. Plaintiffs often worked at more than one worksite in a single day.

35. At all times referenced herein, Plaintiffs would record their hours of work on AWP-assigned tablets.

36. At all times referenced herein, Plaintiffs were not permitted to check in on AWP's tablet

until they arrived at the worksite.

37. Even checking in did not start Plaintiffs' compensable work time; workers would undergo safety briefings upon arriving at the job site, or otherwise be forced in engage in other preparatory activities prior to actually "starting work" on the tablet.

38. Employees, including Plaintiffs, were not permitted to actually clock in to begin receiving pay during these times before they actually began the act of flagging.

39. AWP manager Thomas Rodriguez told Plaintiff Flowers that they needed to start adjusting their own time entries to avoid seeking pay from the time they actually arrived at jobs. This manager instructed Flowers that employees were to "adjust" their work hours to reflect the precise time employees were scheduled to work, rather than the time employees actually worked.

40. When AWP dispatched Plaintiffs to work on multiple job tickets in one day, AWP required Plaintiffs to clock out when travelling between those worksites.

41. Accordingly, Plaintiffs were not paid for travel between worksites during the same workday.

42. Plaintiffs were not paid for any time they spent performing Transportation Duties if it totaled less than one hour.

43. Plaintiffs and other AWP employees were regularly required to remain at each worksite after being required to clock-out for the purpose of cleaning up the worksite and removing AWP's equipment.

44. This off the clock work typically took Plaintiffs 20 to 30 minutes to perform, although it could take up to an hour.

45. Plaintiffs were not paid for work they performed for AWP or its clients off the clock.

46. Plaintiffs were not paid for approximately 10-20 hours of compensable work they performed each week.

47. In failing to accurately record all compensable hours of work performed by Plaintiff Flowers, AWP further violated the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7).

48. Plaintiff Flowers was hired at $10.00 / hour, working at that pay rate for approximately the first two years of his employment with AWP.

49. In the year prior to his termination, Plaintiff Flowers received three raises during his employment with AWP, ending up at the rate of $13.00 / hour.

50. At all times referenced herein, Plaintiff Flowers regularly worked in excess of 40 hours per week.

51. AWP management would habitually alter employees' hours worked after employees had entered those hours into its timekeeping system via AWP's tablets.

52. Plaintiff Flowers caught AWP altering the time entries for him and his coworkers to reduce their hours worked.

53. Plaintiff Flowers and others confronted AWP with this information asking why employees' hours worked were being reduced.

54. In response to these queries, AWP management responded that the employees were merely using the tablets incorrectly.

55. AWP gave different accounts of the ways employees were supposedly failing to use the tablets correctly to different employees to further confuse the issue.

56. Screenshots evidencing AWP's practice of reducing employees' time entries in its system are attached hereto as Exhibit A.

57. Exhibit A1 demonstrates the time entry made by Plaintiff Flowers on July 8, 2019

wherein he clocked in at 6:52 a.m. and clocked out at 9 p.m.

58. Exhibit A2 reflects the changes Defendant made to Plaintiff Flowers' time entry, altering his clock-in time to 7 a.m. and his clock out time to 8:34 p.m.

59. AWP would routinely deduct "break time" from its employees' hours, regardless of whether the employees had actually taken breaks.

60. Exhibit A3 reflects Plaintiff Flowers' time entry for hours worked on July 19, 2019.

61. On July 19, 2019, Plaintiff Flowers took no lunch break.

62. Exhibit A4 demonstrates Defendant's alteration of Plaintiff Flowers' time entry for July 19, 2019, subtracting half an hour from Plaintiff's work time for a lunch break.

63. Exhibits A5-A8 are photos of the time entries made by Plaintiff Flowers for July 22, 23, 24, and 28, 2019.

64. Exhibit A9 demonstrates Defendant's actions in refusing to pay Plaintiff for work based on the times Plaintiff clocked in and out as reflected in Exhibits A3-A6.

65. Exhibit A12 demonstrates Plaintiff's unaltered work time from a job he did on August 14, 2019. Plaintiff clocked out at 7:30 p.m.

66. Exhibits A12-13 demonstrate Defendant's alterations to Plaintiff's clock-out time on August 14, 2019, changing it from 7:30 p.m. to 7:02 p.m.

67. Exhibit A14 demonstrates Plaintiff Flowers and Williams' time entries for work they performed on a job site on August 26, 2019. Plaintiffs clocked in at 6:30 a.m. and clocked out at 6 p.m.

68. Exhibits A15-17 demonstrates Defendant's alterations to Plaintiffs Flowers and Williams' time entries for August 26, 2019, changing their clock-out times to 5:26 p.m.

69. Exhibit A16's form itself also reflects that changes were made retroactively, as the job

foreman's signature has been stripped from the form as can be seen at the bottom.

70. Once AWP's time entry forms are altered, it removes the contracting foreman's signature from the form. This is reflected in the approver signature area at the bottom of exhibits A10 and A11 changing from "Set" in A10 to "Review & Approve" in A11.

71. Exhibit A18 demonstrates Plaintiff's unaltered work time from a job he did on September 4, 2019. Plaintiff clocked out at 8 a.m.

72. Exhibits A19-21 reflect Defendant's alterations to Plaintiff's work time, changing his clock-out time for September 4, 2019 to 7:12 a.m.

73. On multiple occasions, Plaintiff Flowers witnessed AWP remotely altering the time entries for employees' jobs.

74. Plaintiff Flowers witnessed AWP agents altering the time worked for him and his coworkers in real time on his AWP-issued tablet.

75. When AWP would tamper with time entries for jobs which required a jobsite foreman's signature, the alterations would wipe that signature from the timesheet, as those signatures would not remain on an altered timesheet due to the nature of the timekeeping program.

76. An example of this alteration wiping the foreman's signature from the form can be seen at the bottom of Exhibit A9, where the form states "Not Approved by Client."

77. Plaintiff Flowers texted several managers about the rampant timesheet tampering, and AWP failed to take any action to correct this practice. Copies of these text messages are attached hereto as Exhibit B.

78. As a result of AWP's conduct, Plaintiffs were regularly paid a sub-minimum wage.

79. As a result of AWP's conduct, Plaintiffs were regularly denied overtime premium

payments for all overtime hours Plaintiffs worked.

80. AWP would, by policy, subtract two hours of time from each employee's travel time.

81. AWPs proffered justification for this two-hour deduction was that this deduction offset the "gas and maintenance" of its company vehicles.

82. Employees were required to travel en masse in company vehicles as a term and condition of their employment.

83. The conditions of AWP's jobs oftentimes did not permit employees, including Plaintiffs, to take breaks as required by law.

84. AWP's violation of the FLSA was knowing and willful.

85. During the period since at least January 19, 2015, through the present, AWP has repeatedly violated and continues to violate the provisions of the FLSA as set forth above.

86. In 2017, the U.S. Department of Labor Wage and Hour division determined that AWP's practices, as described herein, violated the FLSA. ("DOL Investigation and Findings").

87. Despite the DOL Investigation and Findings, AWP has failed and refused to change its pay practices.

88. AWP willfully and recklessly failed to pay Plaintiffs in compliance with the minimum wage and overtime requirements of the FLSA with full knowledge the pay practices described herein violated the law.

89. AWP did not have a good faith basis to believe that the pay practices described herein were lawful.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA(29 U.S.C. § 207)

90. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully

restated herein.

91. The FLSA requires each covered employer such as AWP to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

92. Plaintiffs were not exempt from the right to receive overtime pay under the FLSA during their employment with Defendant.

93. Plaintiffs regularly worked overtime hours that AWP failed and refused to pay them for.

94. As a result of AWP's failure to properly compensate Plaintiffs at a rate not less than 1.5 times the applicable regular rate for all work performed in excess of 40 hours in a given work week, Defendant violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

95. At all times relevant to this action, AWP willfully failed and refused to pay Plaintiffs all overtime wages due as required by the FLSA, causing Plaintiffs to suffer damages in amounts to be proven at trial.

96. AWP either recklessly failed to investigate whether its failure to pay Plaintiffs an overtime wage for all hours they worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United State while intentionally misleading Plaintiffs to believe that AWP was not required to pay them overtime wages for all overtime hours worked, and/or AWP concocted a scheme pursuant to which it deprived Plaintiffs the overtime pay they earned.

97. In failing to properly pay Plaintifs, AWP willfully and knowingly ignored specific findings by the DOL that its pay practices violated the FLSA.

98. AWP has failed to make, keep, and preserve records with respect to Plaintiffs, sufficient

to determine the wages and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a).

99. AWP's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

100. AWP violated the FLSA without a good faith belief that its conduct was lawful.

101. Plaintiffs are entitled to damages in the amount of his unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including their attorneys' fees and costs.

102. Plaintiffs request recovery of their attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

## COUNT II: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FLSA(29 U.S.C. § 206).

103. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages.

105. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

106. At times, Plaintiffs' compensable activities off the clock caused Plaintiffs hourly rate to dip under minimum wage based on the compensation that they had already received.

107. At all times relevant to this action, AWP willfully failed and refused to pay Plaintiffs the

federal minimum wages required by the FLSA, causing Plaintiffs to suffer damages in amounts to be proven at trial.

108. AWP either recklessly failed to investigate whether their failure to pay Plaintiffs at least a minimum wage for all of the hours they worked during the relevant time period or concocted a scheme pursuant to which it deprived Plaintiffs of the minimum wage pay he earned.

109. Upon information and belief, AWP has failed to make, keep, and preserve records with respect to Plaintifs sufficient to determine the wages and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c)and § 215(a).

110. AWP's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

111. AWP violated the FLSA without a good faith belief that its conduct was lawful.

112. Plaintiffs request recovery of attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

## **DEMAND FOR RELIEF**

Plaintiffs demand a jury trial.

WHEREFORE, Plaintiffs request judgment against Defendant and for an Order:

a. Awarding Plaintiffs unpaid minimum wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b. Awarding Plaintiffs unpaid overtime and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

    c. Awarding Plaintiffs pre-judgment and post-judgment interest as provided by law;

    d. Awarding reasonable attorneys' fees and costs; and

    e. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

CARL FLOWERS, JARROD SERZYNSKI,
JOYCE PURSLEY, AMANDA HALL,
JESSICA WILLIAMS and HAILEY TUCKER,

Plaintiffs,
By Counsel.

/s/ Kirk Auvil
Kirk Auvil (WVSB #12953)
Walt Auvil (WVSB #190)
Anthony Brunicardi (WVSB #13593)
The Employment Law Center PLLC
1208 Market St.
Parkersburg, WV  26101
Phone: (304) 485-3058
Fax:    (304) 485-6344
Email: auvil@theemploymentlawcenter.com

Attorneys for the Plaintiffs